Rockingham, June 1, 1943. } No. 3395.

EGBERT J. MANOR, *Adm'r v.* UBALD E. GAGNON.

*Henry F. Collins* (of Massachusetts) and *Chester T. Woodbury*, (*Mr. Collins* orally), for the plaintiff.

*McLane, Davis & Carleton* (*Mr. Robert P. Bingham* orally), for the defendant.

BURQUE, J.   There was ample evidence from which the defendant could be found at fault.   The accident happened at 10:40 P.M. Defendant and his wife together with the owner of the car, one Gray and his bride of twenty minutes, were returning from the residence of a Justice of the Peace where the marriage had been performed. The defendant was driving in an easterly direction on the southerly side of the street.   Facing him was a bus that had stopped to let off the decedent, a boy of practically sixteen years of age.   The distance between the two vehicles can be found to have been from one hundred to two hundred feet.   The bus started up as the automobile continued to approach at a speed of between twenty and twenty-five miles per hour.   The defendant did not slow down, and as he passed the bus the boy came from behind it and collided with the defendant's automobile at the post at the left hand side of the windshield.

Laws 1935, *c.* 107 (R. L. *c.* 119, *s.* 21), provides as follows: "The driver of any motor vehicle, approaching or passing . . . a motor bus or other vehicle used for the purpose of transporting passengers, which has been stopped to allow passengers to alight or embark, shall slow down such vehicle and, if it be necessary for the safety of the public, shall bring it to a full stop."   Violation of the above statute can be found to be causal.   The jury could very well say that had the defendant slowed down the accident would not have happened.

The defendant, in his attempt to excuse his conduct, in not slowing down or stopping, argues that the statute imposes a duty only upon the driver of a car going in the same direction as the bus.   This can-

not be true. Buses stop on the side of the road and not in the center thereof, as street cars (to which the statute also applies), did. There is no reason why the statute should be so narrowly construed. Passengers who alight from buses do not all stay on the same side of the street where they alight. They are just as apt to cross the street, either ahead of the bus or from its rear and cross the street, as they are to stay on the side of the street where they alight. This is common knowledge. It follows care is required to look out for alighting passengers who are likely to appear both in front and in the rear of the bus. A driver going in the same direction as the bus can see a passenger in the rear of the bus, but probably not in front. *Vice versa* a driver going in the opposite direction can see a passenger in the front of the bus, but probably not in the rear. So reason for care, and for the application of the statute applies equally to both. If for no other reason than not complying with the statute the defendant's conduct can be said to have been a breach of duty owed to the decedent and causal. "Causal violation of a statute is a legal fault." *Frost* v. *Stevens*, 88 N. H. 164, 167.

Contributory negligence on the part of the decedent was also urged as a ground for nonsuit and directed verdict. The only evidence relating to the boy's conduct is that after alighting from the bus, he stood facing the door, said goodnight to the operator, and was still standing there when the bus started. It does not appear that he looked to the west to see if a car was coming nor does it appear that he looked as he came from behind the bus into the street. The defendant did not see him before the collision; nor did Gray, who sat in the rear seat and was paying more attention to his wife than to the road. Defendant says, "The minute I heard the thump I see something goes fast, I just seen something and I heard a thump." Gray, in answer to the question, "Did you see anything white come up against the side of your car?" said, "I couldn't say it was white, it looked like a flash." (It is in evidence that the boy wore a white sweater.) Such evidence throws no light on the boy's conduct. It is insufficient to warrant a finding that the decedent was negligent as a matter of law. Defendant's burden of proving decedent's contributory negligence cannot be said to be met in such a state of facts. The burden of proving contributory negligence being on the defendant, P. L., *c.* 328, *s.* 13 (R. L., *c.* 384, *s.* 13) he must prove the plaintiff (decedent) was negligent. "In the absence of evidence, the mere possibility, which exists in every case, that the plaintiff [decedent] may have been guilty of negligence, cannot be made the

basis of a ruling against him." *Demers* v. *Becker*, 91 N. H. 519, 520, 521.

Further, decedent had the right to rely on defendant's compliance with the statutory provision discussed above. If, as is said in *McCarthy* v. *Souther*, 83 N. H. 29, 31, 32, decedent had the right to rely on careful driving towards him, and if a plaintiff has the right to rely on the giving of statutory whistles when a train is approaching a grade crossing (*Fuller* v. *Railroad*, 78 N. H. 366; *Doody* v. *Railroad* 77 N. H. 417), and on the giving notice of the approach of a wild engine at a private crossing by whistling in accordance with the rules of the railroad (*Lyman* v. *Railroad*, 66 N. H. 200), it follows *a fortiori* that one has the right to rely on observance of statutory regulations governing operation of automobiles in certain given situations.

The motions for nonsuit and directed verdict were properly denied.

Plaintiff introduced evidence of a double-faced sign, located on the north side of the street, reading: "Children Drive Carefully." Defendant duly excepted to this evidence, to argument based thereon and to the court's charge to the effect that though "the sign had no statutory force or authority," "the fact that such sign was there . . . is to be considered only as a circumstance in appraising the situation as it existed on the night in question and as bearing on the conduct of the defendant in the operation of his automobile, and whether such sign was in any way to be taken as a warning to the defendant in the operation of his automobile and the manner of his operation." We are of opinion this was error. It is difficult to see how this sign could have any bearing on the operation of any car being driven in an easterly direction at that time of night. The accident happened at 10:40 P.M. on a Saturday. The sign is located at a distance of several hundred feet east of the schoolhouse, and certainly is not intended to give warning of the presence of school children likely to be encountered at that hour of the night. Defendant's exception to the introduction of the evidence, to its use in argument and to the court's charge as to its applicability, is sustained.

This renders it unnecessary to consider defendant's exceptions to other portions of plaintiff's argument. It is to be assumed that such portions of plaintiff's argument which appear dangerously close to the line of proper objection, and excepted to, will not be repeated at the next trial.

As there is to be a new trial it may be well to pass upon defendant's exceptions to the charge and to the denial of his requests for instruc-

tions.   What we have said in discussing defendant's motions for nonsuit and directed verdict will dispose of requests two, thirteen, and seventeen; two refers to defendant's duty to anticipate the boy's presence; thirteen and seventeen to the application of the emergency doctrine, which is not in issue in this case.   Request six seeks to have the jury instructed to the effect there was no evidence to charge the defendant with neglect after he saw the boy.   Though this is a proper request it need not be given where there is no issue made of such negligence.   Request eight was to the effect the jury was not to conjecture as to what the boy did.   This is closely connected with requests nine and eleven, to the effect that if the boy knew or should have known the car was coming, and if the boy looked and did not see when he could have, he was guilty of negligence.   In the absence of evidence as to what the boy did neither one of these three requests needed to be given.   Request eleven, "the fact that an accident happened is not evidence of negligence," is proper but need not necessarily be given when the jury is properly and fully instructed as to the law and the burden of proof, as was done in the instant case.

Exception to the court's charge relating to the statute (P. L., c. 103, s. 13; R. L., c. 119, s. 22) that governs operation of vehicles approaching pedestrians has no merit.   The statute on this point merely reinforces the common law, as to which the jury was fully instructed.

There was no error in the court's charge relating to damages.

Three grounds were stated to support defendant's exception thereto.   I. "Dependency is determined at the moment of death and this boy had no dependents."   He had a mother and she was at least a prospective dependent.   Her actual dependency at the time was not required.   The statute calls for future as well as present dependency of its assigned beneficiaries.   II. Funeral expenses are not recoverable because they were paid by the mother and not by the administrator.   Funeral expenses are part of the damages to be recovered R. L., c. 355, ss. 12, 14, are a charge against the estate and are to be paid by the administrator R. L., c. 356, s. 22.   The mother testified she is looking to the administrator for reimbursement, and will present the bill to him.   She is entitled to reimbursement and the administrator is obligated to pay her.   III. Defendant objected "to that portion of the charge that told the jury that money recovered by the administrator in this action would go to the parents or the statutory beneficiaries."   Technically speaking it might be said

the court should have added "after payment of charges against the estate, such as burial expense, and expense of administration." The omission is harmless as the Probate Court would take care of that when the administrator's account was rendered and a decree of distribution entered. Defendant added it was prejudicial for the court to tell the jury who would receive the proceeds of the verdict. If prejudice might be found, it is a factual issue and not one of law.

*New trial.*

All concurred.